## THE JOSEPH STICKNEY.

### (District Court, S. D. New York. January 12, 1904.)

1. SALVAGE IN CASE OF FIRE—AWARD FOR SERVICES TO BURNING TUG.

A tug worth $15,000, lying in a harbor with several others and their tows, on account of bad weather, took fire in the night, and was abandoned by her crew, and cut adrift. Libelant's tug and another went to her assistance, and succeeded in extinguishing the fire, the service lasting from one to one and a half hours. There was some danger from steam explosions, one having occurred before the salving tugs reached the burning boat. The damage amounted to $2,300. *Held* that it was a meritorious salvage service, which entitled libelant and the crew of its tug to an award of $850, to be divided between them.

In Admiralty. Action to recover for salvage services.

Wilcox & Green, for libellant.
Carpenter, Park & Symmers, for claimant.

ADAMS, District Judge. This action was brought by the Hartford & New York Transportation Company, as owner of the Tug Mabel, and on behalf of the master and crew, to recover for salvage services to the Tug Joseph Stickney, in Manhasset Harbor, on the north shore

¶ 1. Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

of Long Island, near the City of New York, on the 22nd day of September, 1902.

The tugs had gone into the harbor, with their tows, bound east, on account of bad weather and were awaiting a change for the better, when a fire was discovered on the Stickney, shortly after 11 o'clock at night. The master of the Stickney was in bed, in the after part of the boat on the main deck, and when informed by the engineer of the fire, he, in company with the others of the crew, some of whom were on duty, abandoned the tug and went aboard of the Tug Battler, lying alongside of the Stickney. The crew of the Battler cut the Stickney adrift after the crew had left her. The Battler was made fast to her anchored tow. The wind was brisk from the East.

There were some other tugs in the harbor but none of them seemed to have had steam in readiness for use except the Mabel and the A. P. Skidmore. The latter rendered some service in the fire and towing of the Stickney was done by her subsequently. She was settled with by the claimant of the Stickney, shortly after the fire. Several of her crew appeared in the case as witnesses for the Stickney.

There is no question about the rendition of salvage services by the Mabel and her crew, aided by two men from the Tug Ward, alongside of which the Mabel was lying when the fire broke out, but there is a serious dispute as to the amount which should be awarded therefor, the contention on the Mabel's part being that she had the fire practically out when the Skidmore reached the Stickney, and the latter claiming that the Skidmore reached the scene at practically the same time as the Mabel and rendered at least equal services, which were not of a very valuable character.

I find the Mabel reached the Stickney about 11:15 o'clock and the Skidmore about 10 or 15 minutes afterwards, before the flames were subdued. Both tugs rendered salvage services but the Mabel's were the more valuable. Although she only had a 1½ inch hose, with a nozzle of less than an inch, she threw an efficient stream of water. The Mabel was worth from $20,000 to $25,000 and was fairly well equipped to afford assistance in a case of this kind. She was somewhat larger than the Skidmore, the latter, however, being supplied with a 2½ inch, corporation size, hose.

The fire was a dangerous one to the Stickney, which suffered to the extent of $2,300 on a whole value of $15,000, and it may safely be inferred that without assistance from the Mabel and the Skidmore, the damage would have been considerably greater. It is urged by the Stickney that she could have been scuttled and her hull saved. I consider it probable that the hull, which was of iron, would not have been greatly damaged, although no one was left on the Stickney to scuttle her. Some of her crew returned in a small boat, however, before the fire was out and it may be that the scuttling service could have been rendered by them, in time to avoid serious injury to the hull but not in season to save the upper works.

It was a meritorious salvage service, lasting from an hour to an hour and a half, and was attended with some apparent risk, from steam explosions. One explosion did take place about 15 minutes after the Stickney's crew left and just before the assisting tugs got alongside.

This explosion had some tendency to subdue the flames. There was no other explosion thereafter. It could not, however, be determined in advance that no danger existed, or would exist, and it is an element to be considered in arriving at an award. The flames and smoke were considerable and such as to create some natural apprehension, especially in view of the explosion which had occurred.

I consider that the sum of $850 will afford a proper salvage compensation and award. I award that amount to the libellant, two-thirds of the same to be retained by itself as owner of the tug and one-third to go to the crew of the tug, including the men from the Ward, in proportion to their wages.

Decree accordingly.